WILLIAM A. CARLEY v. ELIAS F. GRAVES, RECEIVER, ETC.

*Insolvent estate—Trust fund.*

85  483|
93  344|
94   82|

A railroad company guaranteed the payment of a note, on condition that the amount called for was due the maker at its maturity. Before that date it settled with the maker, and retained out of the amount due him the amount of the note, which it charged to him on its books, and credited to the payee, who was informed of such credit, and demanded the money, for which the railroad company offered him its note, which he refused to accept. The money was mingled with the effects of the company, after which a receiver was appointed for the corporation in a foreclosure suit, to whom all of the property of the company was turned over, and who sold the same and realized the money thereon; after which the payee filed a petition in the foreclosure suit, praying for the payment to him by the receiver of the amount due on the note. And in affirming an order for such payment the Court hold that the relation of debtor and creditor did not exist between the railroad company and the payee, but that when it charged the money to the maker, and credited it to the payee, it became a trust fund in its hands, to be delivered over to the payee.

Appeal from Menominee. (Grant, J.) Argued April 8, 1891. Decided May 8, 1891.

Respondent appeals from an order directing the payment to petitioner of the amount of his claim from the funds of the estate. Order affirmed. The facts are stated in the opinion.

*B. J. Brown,* for appellant.

*Sawyer & Waite,* for petitioner.

CHAMPLIN, C. J. Graves was appointed receiver of

the Ingalls, White Rapids & Northern Railway Company, a corporation organized under the laws of Michigan, operating a logging railway in Menominee county. J. H. Kiel was treasurer of the corporation before it went into the hands of the receiver.

In January, 1888, William A. Carley sold to one William Stannard a team of horses for $200, and took a promissory note therefor, of which the following is a copy:

"$200.                MENOMINEE, MICH., January 19, 1888.

"Ninety days after date, for value received, I promise to pay to Ingalls, White Rapids & Northern Railway Company, or order, at the First National Bank of Menominee, two hundred dollars, with interest at the rate of eight per cent. per annum until paid.
                                  "WM. STANNARD."

Said note was indorsed on the back as follows:

"We, the I., W. R. & N. Ry. Co., guarantee payment, provided the within amount is due him at the expiration of the allotted time.
                              "J. H. KIEL, Treasurer."

On the 31st of March, 1888, Stannard had a settlement with the railway company, and it retained out of the amount due him $205, which amount was charged to him on the books of the company, and William A. Carley was credited with the same amount. Carley was informed that the amount was retained by the railway company for him, and he demanded the same of the company. The company offered to give him its note, which he refused.

After the appointment of the receiver in a foreclosure suit,[1] Carley filed his petition, praying that the receiver be ordered by the court to pay over to him the amount of principal, and interest at 8 per cent., of the said note,

---

[1] This appointment was made on May 12, 1888.

out of the property in his hands, claiming that the said receiver held the amount as a trust fund, and not as the property of the defendant company. He filed his claim in the suit against the receiver, and the receiver answered, denying that he had any money whatever in his hands, as receiver, belonging to Carley, and denying that any money was turned over to him as such receiver by the defendant company.

Testimony was taken in support of the claim filed, in which the facts, as above delineated, as to the sale of the horses and the giving of the note and guarantee of payment, appeared; also that the company settled with Stannard, and retained from the amount due him $205, which was charged to Stannard and credited to Carley.

The receiver was also sworn, and testified to the charges and credits as they appeared upon the books of the corporation under the date of March 31, 1888. He further testified that he did not come into possession of any money of the railway company as receiver. It was admitted that property of the railway company came into his hands as receiver of the railway company under a bill filed to foreclose a mortgage, which property was covered by the mortgage. It further appeared that, at the time of the service of the petition of Carley, the receiver had in his hands a sufficient sum in money derived from the sale of property covered by said mortgage, and from the earnings of said railroad after he took possession thereof as such receiver, to pay the claim of said Carley. It also further appeared that the mortgaged premises were sold under the decree of the court for the sum of $50,000, and that after the application of all the moneys in the hands of the receiver there was a deficiency upon said sale of the sum of about $40,000.

The circuit judge, after the hearing, ordered that the receiver pay to the solicitors for the claimant the sum of

$204 out of the funds of said receivership, and the receiver has brought the matter here for review by this Court.

Counsel for the petitioner, Carley, do not claim in this Court to hold the railway company or its receiver in this proceeding because of any liability of it as indorser or guarantor of said note, but simply because it was intrusted with money to pay the note; and the claim is that when Stannard settled with the company, and left with it the money to pay the Carley note, that money became a trust fund; that the petition set forth, and that the proofs show, that the money had been left with the company by Stannard with which to pay the note, with interest; that the company had failed to pay over the same, but had mingled it with the effects of the company before the appointment of a receiver; that all the effects of the company, after such mingling of the trust fund, were handed over to the receiver; and that the receiver sold the same, and realized the money thereon. And the question in the case is whether the contention of petitioner's counsel is correct, or whether the relation between the railway company and Carley was simply that of debtor and creditor.

We do not see that the relation of debtor and creditor existed between Carley and the railway company. When Stannard settled with the railway company, he left in its hands $205, which was due to him from the railway company, and in legal effect it was the same as if it had paid the money over to Stannard, and then he had handed it back to the company to be delivered to Carley. When it charged the amount due Stannard to him upon its books, and credited Carley with the sum of $205, it was an appropriation of that sum of money in its hands for Carley's benefit. It held it, then, not as a creditor of Carley, but as a trust fund to be delivered over to

him. And it appears from the testimony in the case that, instead of performing the trust, it has mingled the money in its hands with the assets belonging to itself or used it for its own benefit. It cannot be specifically traced, but there is enough in the proof to warrant the inference that it has mingled the trust fund with its own individual means, and has rendered it impossible to be specifically traced into other property in its hands, and that it has been used by the company either to pay off its debts or to increase its assets. In either case, it would be to the benefit of its estate. We think the case of *McLeod v. Evans*, 66 Wis. 401 (28 N. W. Rep. 173), covers the principle which ought to be applied in this case. See *Pierce v. Holzer*, 65 Mich. 272, and *Justice v. Tallman*, 86 Penn. St. 147.

The indorsement of the railway company upon the back of the note which Stannard gave to Carley, guaranteeing payment, provided the amount was due Stannard at the end of 90 days, the time which the note was to run, did not change the relation between Carley and the company so as to make it a contract relation, and the debt a simple contract debt. The guarantee was conditional, but before the time arrived Stannard made a different arrangement with the company, by which he placed in its hands the money due from him to Carley, and which it received and agreed to deliver to him (Carley).

It follows that the order appealed from must be affirmed.

MORSE, McGRATH, and LONG, JJ., concurred. GRANT, J., did not sit.