In re T & T PARTS WAREHOUSE,
INC., Debtor.

OMAHA NATIONAL BANK, a National
Banking Association; Huntington Na-
tional Bank, Dayton, Ohio, a National
Banking Association; and Fort Wayne
National Bank, a National Banking As-
sociation, Plaintiffs,

v.

T & T PARTS WAREHOUSE, INC., and
Old Kent Bank and Trust
Company, Defendants.

Bankruptcy No. NG 83–02933.

Adv. Proceeding No. 83–1513.

United States Bankruptcy Court,
W.D. Michigan.

April 14, 1984.

Warner, Norcross & Judd, Grand Rapids, Mich., for Old Kent Bank & Trust Co.

Law, Weathers & Richardson, Grand Rapids, Mich., for Omaha Nat. Bank.

Huff, Kreis, Enderle, Callander & Hudgins, Kalamazoo, Mich., for defendant, T & T Parts Warehouse, Inc.

Clary, Nantz, Wood, Hoffius Rankin & Cooper, Grand Rapids, Mich., for Huntington Nat. Bank of Dayton, Ohio.

Rhoades, McKee & Boer, Grand Rapids, Mich., for Fort Wayne Nat. Bank.

DeGroot, Triant, Conklin & Carpenter, P.C., Grand Rapids, Mich., for Creditors' Committee.

McShane & Bowie, Grand Rapids, Mich., for debtor.

Day, Sawdey, Flaggert & Porter, Grand Rapids, Mich., for Nat. Acceptance Corp. of America.

## OPINION AND ORDER ON MOTION TO DISMISS AS TO OLD KENT BANK

DAVID E. NIMS, Jr., Bankruptcy Judge.

This adversary proceeding is brought by three banks to determine their interest in funds deposited in debtor's account in a fourth bank. The defendant bank, Old Kent Bank and Trust Company (Old Kent), of Grand Rapids, Michigan, filed a motion to dismiss.

The motion to dismiss is filed pursuant to Bankruptcy Rule 7012(b) and Fed.R.Civ.P. 12(b)(6).

"In reviewing a dismissal on the pleadings all allegations in the complaint are taken as true and the complaint is construed liberally in favor of the party opposing the motion to dismiss. *Davis H. Elliot Co. v. Caribbean Utilities Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir.1975). See generally 2A J. Moore, Federal Practice ¶ 12.08 at 2265–67 (2d ed. 1975) (hereinafter Moore). Dismissals of complaints

under the civil rights statutes are scrutinized with special care. See *Azar v. Conley*, 456 F.2d 1382, 1384 n. 1 (6th Cir.1972); *Lucarell v. McNair*, 453 F.2d 836, 838 (6th Cir.1972). A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. Rule 8(a)(2) simply requires 'a short and plain statement of the claim showing that the pleader is entitled to relief ...' Fed.R.Civ.P. 8(a)(2). All a complaint need do is afford the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.' *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). See generally 2A Moore ¶ 8.02 at 1611. A motion to dismiss under Rule 12(b)(6) should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson, supra* at 45–46, 78 S.Ct. at 102. See also *Elliot v. Caribbean Utilities Co., Ltd., supra* at 1182. See generally 2A Moore ¶ 12.08 at 2273–74." *Westlake v. Lucas* 537 F.2d 857 (6th Cir. 1976)

For the purpose of disposing of Old Kent's motion to dismiss, the findings of fact are determined by following *Westlake v. Lucas, supra.*

Involved here is what is known as check kiting. In its most simple operation, the kiter, who has no money, opens accounts at Bank A and Bank B. He then writes a check on April 1 for $5,000 to his creditor on Bank A. On April 2, he deposits a check for $5,000 written on his account at Bank B in his account at Bank A and continues to do so each two days thereafter. On April 3 and every two days thereafter he deposits a $5,000 check written on Bank A in Bank B. See Marshall & Wright, Taking the Wind Out of the Kite!, Mag. Bank Ad., Apr. 1983 at 62–66. The kite usually comes to a grinding halt when one bank realizes what is happening and refuses to credit a deposited check until paid by the drawee bank. The kiter takes advantage of the time lag between the delivery or deposit of the check and its payment by the payor bank.

The debtor and defendant, T & T Parts Warehouse, Inc. (T & T) is one of eight affiliates which have filed petitions under Chapter 11 of Title 11 of the United States Code. T & T did business in Grand Rapids, Michigan, and had a bank account with Old Kent. Omaha Spring Service, Inc. (Omaha Spring), another affiliate, did business in Omaha, Nebraska, and had a bank account with plaintiff, Omaha National Bank, a National Banking Association (Omaha National). T & T Parts of Dayton, Inc. (Dayton) did business in Dayton, Ohio, and had its bank account in Plaintiff, Huntington National Bank, Dayton, Ohio, a National Banking Association (Huntington). Fort Wayne National Bank, a National Banking Association (FWNB), also became a victim of the check kiting operations of T & T and its associates. This check kiting took place during October and November of 1983. Because it was more alert, because it had a more sophisticated computer or because it was at the center of the whole scheme, Old Kent was the first bank to become aware of the check kiting. It, then, refused to credit checks to T & T accounts until paid by the payor bank and returned checks on T & T accounts. On November 8, 1983, Old Kent set off against T & T accounts the sum of $56,356.06 to pay off the principal and interest on a debt owed it by T & T or an affiliate. On November 21, 1983, Omaha National obtained a temporary restraining order through a State Court which, inter alia, restrained T & T, its affiliates, and Old Kent from "removing, withdrawing, transferring, drawing upon, encumbering or releasing any or all funds * * in the account(s) of defendant T & T Parts Warehouse, Inc., at Old Kent Bank and Trust Co." On the same day, T & T and its affiliates filed their voluntary petitions for relief under Chapter 11 in this Court. This adversary proceedings was commenced November 30, 1984.

As a result of the check kiting, the accounts of T & T or its affiliates are overdrawn as follows:

| | |
|---|---|
| Omaha National | $334,749.00 |
| Huntington | 99,960.00 |
| FWNB | 493,172.24 |
| Total | $927,881.24 |

It is not clear from the pleadings as to the amount on deposit in T & T's account in Old Kent at the time of filing the petition but the amount was around $400,000. Old Kent asserts a right to set off $73,000.00 owed to it by T & T or one of its affiliates and has moved for relief from stay to permit it to do so.

The Court is faced with two issues:

1. Does Old Kent have the right of set off against the funds in the accounts of T & T or its affiliates?

2. Do the plaintiff banks have a right to recover from Old Kent the pre-petition set off?

As to the first issue, this Court has jurisdiction. Under the Model Interim Rule this would be a core bankruptcy matter as it involves the issue of whether a certain asset is an asset of the estate. But, I have difficulties with the second issue. If it is a related proceeding I can hear the proofs and make a report with recommendations to the district judges. Is this a related case? As the briefs are not clear on this issue and as I will be denying the motion to dismiss on the basis of the first issue, I will reserve any comment on the second issue for determination at the time of trial and upon submission of further briefs.

11 U.S.C. Section 553 provides in part:

"(a) Except as otherwise provided * * this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, * * "

█ The right of set off as to bank deposits has been recognized on numerous occasions. *McDaniel Nat. Bank v. Bridwell* 74 F.2d 331 (8th Cir., 1934) But, the debts must be *mutual.*

"To be mutual, the debts must be in the same right and between the same parties standing in the same capacity. It has been said that the word 'mutual' in former Section 68a and in Section 553(a) of the 1978 Act 'implies that a person sued in one capacity by a trustee in bankruptcy cannot offset a demand running in another capacity to the person so sued. Similarly, it has been said that 'mutual' means 'the creditors' debt must be owed to the estate of the debtor and the estate's debt must be owed to the creditor.'" 4 Collier on Bankruptcy ¶ 553.04 (15 Ed.1983)

It is not disputed that Old Kent has a valid claim against the estate. But, has the estate a valid claim against Old Kent? It is the claim of plaintiffs that the claim to the bank deposit is in them and not the estate. They rely on the doctrine of constructive trust as recognized in Michigan. Over one hundred years ago, the Michigan Supreme Court held that where an agent deposited proceeds of a bond belonging to his principal, the bank could not set off its claim against the agent even though it has no knowledge of the agency. *Burnett v. The First National Bank of Corunna.* 38 Mich. 630 (1878) Ever since, Michigan has consistently used the equitable device of the constructive trust to reach just results.

*Kent v. Klein* 352 Mich. 652, 91 N.W., 2d 11 (1958); *Union Guardian Trust Co. v. Emery* 292 Mich. 394, 290 N.W. 841 (1940); *Long v. Earle* 277 Mich. 505, 269 N.W. 577 (1936); *Gillen v. Wakefield State Bank* 246 Mich. 158, 224 N.W. 761 (1929); *Patek v. Patek* 166 Mich. 446, 131 N.W. 1101 (1911); *Carley v. Graves* 85 Mich. 483, 48 N.W. 710 (1891); *Arndt v. Vos* 83 Mich. App. 484, 268 N.W.2d 693 (1978).

*Kent v. Klein, Supra,* was an interesting case. A mother decided to divide her real estate among five of her children. Because her son John was not well, the deed to his share was made out to a daughter, Edith. This deed was recorded but retained by another son. There was no indication that Edith knew of this deed until sometime after its recording. After John's

death, Edith refused to convey the property to John's widow and son. She contended that there was no wrongdoing in her obtaining of the deed, that she never promised to deed back the property and, even if she did, the statute of frauds would make such agreement unenforceable. The trial court ordered the defendant to convey John's share to his heirs. Defendant appealed. Justice Smith, writing for a unanimous court stated:

"What is overlooked in all of this is the fact that the constructive trust is not a trust at all, any more than a quasi-contract is a contract. See 4 Scott on the Law of Trusts, § 462.1. Both are remedial devices. The constructive trust, as it was put by Mr. Justice Cardozo, 'is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not, in good conscience, retain the beneficial interest, equity converts him into a trustee.' *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378. It arises by operation of law. (Cf., 'unless by act or operation of law' in CL 1948, § 566.106 [Stat Ann 1953 Rev § 26.906] quoted in footnote, *supra.*) That defendant made no promise to hold in trust is utterly irrelevant. The constructive trust is as contemptuous of promises not made as of promises broken. The fact that a thief fleeing with his loot promises nothing avails him nothing. He remains a constructive trustee. *Lightfoot v. Davis*, 198 N.Y. 261, 91 N.E. 582, 29 LRA NS 119, 139 Am St Rep 817. Fraud in the inception we do not require, nor deceit, nor chicanery in any of its varied guises, for it is not necessary that property be wrongfully acquired. It is enough that it be unconscionably withheld. *McCreary v. Shields*, 333 Mich. 290, [52 N.W.2d 853]; *Rudenberg v. Clark*, 72 F.Supp. 381. Nor is it necessary, to move the chancellor's conscience, that plaintiffs have suffered a loss, although in most cases there is both a loss to the plaintiffs and a like gain to the defendant. *United States v. Carter*, 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed. 769; *Olwell v. Nye & Nissen Co.*, 26 Wash.2d 282, 173 P.2d 652, 169 ALR 139; *Carey v. Safe Deposit & Trust Co.*, 168 Md. 501, 178 A. 242."

In this case the check kiting by debtor and its affiliates could be fraudulent and the obtaining money from the plaintiff banks be by deceit, misrepresentation, and chicanery. Old Kent took no part in the kiting, but it did discover the kiting operation and proceeded to protect itself as was its right. The question is whether it had the right to allow the account to build up to a point where it could set off its claim against the debtor or its affiliates.

In *Gillen v. Wakefield State Bank*, 246 Mich. 158, 224 N.W. 761 (1929), where the bank knew that the funds in the bank account were the result of the sale of cattle of others by the depositor, the court imposed a trust on the funds so that the bank could not set-off. There, the bank promised to honor the depositor's checks but instead set off its claim. At page 170, 224 N.W. 761, the court stated:

"Where a commission merchant is known by a bank to be engaged in that business and his deposits in the bank are known by it to be the proceeds of the sales of the property of those who have consigned the same to him for sale, that is notice to the bank of the ownership of the deposit arising from depositing the proceeds of such sales, and the bank has no right to set off the principal's credit in its bank against the agent's indebtedness. If it does so, a constructive trust arises in favor of the true owners of the deposit and they may follow it in the hands of the bank and impress a trust upon it in their own favor and recover it from the bank."

"It is not necessary that property be wrongfully acquired. It is enough that it be unconscionably withheld." *Chapman v. Chapman* 31 Mich.App. 576, 188 N.W.2d 21 (1971)

But, Old Kent claims that regardless of what the law in Michigan may have been as

to the equitable relief of constructive trust, it was changed when that state adopted the Uniform Commercial Code.

Mich.Comp.Laws Section 440.4213 (Mich. Stat.Ann. Section 19.4213 (Callaghan 1981)) provides in part:

"(1) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:

(a) paid the item in cash; or

(b) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement; or

(c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or

(d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement.

Upon a final payment under subparagraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item.

" * * *

"(4) Subject to any right of the bank to apply the credit to an obligation of the customer, credit given by a bank for an item in an account with its customer becomes available for withdrawal as of right;

(a) in any case where the bank has received a provisional settlement for the item,—when such settlement becomes final and the bank has had a reasonable time to learn that the settlement is final;

(b) in any case where the bank is both a depositary bank and a payor bank and the item is finally paid,—at the opening of the bank's second banking day following receipt of the item.

(5) A deposit of money in a bank is final when made but, subject to any right of the bank to apply the deposit to an obligation of the customer, the deposit becomes available for withdrawal as of right at the opening of the bank's next banking day following receipt of the deposit."

Old Kent relies on *Citizens National Bank v. First National Bank* 347 So.2d 964 (Miss.Supr.Ct.1977). In that case, the bill of complaint charged that one Duran and seven companies controlled by him maintained accounts in the Citizens National Bank and First National Bank, that Duran and his companies then commenced kiting checks between the two banks, that First National discovered the kiting and instead of immediately notifying Citizens, it returned substantially all checks of Duran and Duran Companies, that First National accumulated funds which it used to set off against debts owed it by Duran and Companies. The complaint also charged that the funds were owned by Citizens and had been obtained from it by false pretenses, conversion, or misrepresentation due to the unlawful kiting, and that setting off the balances so acquired was wrongful and an unlawful conversion of monies belonging to Citizens in the sum of $500,000. Prayer was for judgment of $500,000 or return of all funds belonging to Citizens and for punitive damages. First National interposed the common law demurrer. The lower court found that First National was not charged with doing anything wrong and sustained the demurrer but granted Citizens thirty days in which to amend its complaint if it so desired. Instead, it appealed. The Supreme Court affirmed because the complaint did "not charge First National Bank with doing anything illegal and the First National Bank had a legal right to do the things it did for its own protection."

In its discussion, the court stated that once payment was made in accordance with the provisions of the U.C.C., Citizens no longer owned the funds and, thus, there could be no conversion by First National. The court pointed out that Citizens, in its complaint, did not allege that it did not know of the kiting and that, if it had known, it would not have cashed the checks. The court went on to state that unless the payment of the check was induced by fraud or misrepresentation *on the*

*part of the holder*, such payment closes the transaction insofar as the holder of the check is concerned. Thus, unlike the Michigan decisions, it is not sufficient that the holding in itself may be wrongful and thus be a basis for the constructive fraud. The court found that the complaint charged insufficient facts to show fraud.

*Citizens National Bank v. First National Bank, supra*, is a rather strange case apparently based on the strict rules of common law pleading rather than the more liberal pleading practice under the F. Rules of Civil Procedure. The appellate court pointed out that Citizens had its opportunity to amend but refused to do so and so the court held it strictly to the allegations in the complaint. It does appear to hold that at least in Mississippi, there can be no constructive trust unless the funds were obtained by the false pretenses, misrepresentations, or fraud of the holder. Although elsewhere in the opinion the court refers to the Uniform Commercial Code, it is not clear that it was claiming that the U.C.C. changed any previous right to apply the constructive trust doctrine.

Old Kent claims that unless the U.C.C. provisions as to payment under Art. 4 would prevent the imposing of a constructive trust, it is useless. I cannot agree. In *Demos v. Lyons* 151 N.J.Super. 489, 376 A.2d 1352 (1977), the defendants claimed that because the plaintiff bank paid a check, the U.C.C. would bar restitution. The court disagreed although it did find under the facts of that case that the bank assumed the risk of the drawer's credit. The court stated:

"The word 'final' as used to describe a payment, embraces two distinct concepts: one, a rule of law; the other, the time payment occurs.

As a rule of law, 'payment is final' refers to the common law principle that one cannot recover back money paid, simply because of a change of mind. Its rationale is repose. Establishing the finality of a payment tends to assure stability in people's affairs. However, the law may compel restitution where there

are competing considerations—such as fraud, duress and mistake—favoring the payor. When these considerations are raised, the evidence must be examined and equities balanced.

" * * *

"Section 4–213(1) cannot displace common law restitution by implication from silence.

" * * *

" * * * I conclude that that section does not diminish a payor bank's common law right to restitution."

The section referred to is Section 4–213(1).

*North Carolina National Bank v. South Carolina National Bank* 449 F.Supp. 616 (D.S.C.1976) is an excellent example of how Section 4–213(1) will operate to resolve time problems between banks.

In a recent decision, *National Savings and Trust Co. v. Park Corporation* 722 F.2d 1303 (6th Cir.1983), a diversity action, National challenged the summary denial of its claim for restitution of $74,737.25. The sales agent for Park Corp., the appellee, had called National twice to determine if there were sufficient funds on hand to cover a $75,000 check. Each time it was notified that there were insufficient funds. The bank's employee then instructed the "platform" officer not to accept any of maker's checks drawn on insufficient funds. Through a bizarre set of circumstances, the check was paid even though the maker had only $263.75 in its account. Six days later, National discovered its mistake and requested Park to return the $75,-000. Park refused and National brought this law suit. The district court granted a summary judgment for Park on the grounds that National had made an improvident extension of credit. Park claimed that Section 4–213 bars restitutionary recovery. Although conceding that there were some holdings to the contrary, the court reversed, stating:

"Thus, it seems evident that the drafters of the Code never intended for section 4–213 to supercede section 3–418, and we can see no reason to adopt a position contrary to that intent.

As further support for our decision, we feel obliged to note that White & Summers, the authorities most relied on for the contrary proposition, now appear to have changed their minds. Professor White, in a note written for a colleague's textbook, has recanted and now supports the view that section 4–213 makes no substantive change in the law of restitution as applied to banks. See D. Epstein & J. Martin, Basic Uniform Commercial Code 514 (2d ed. 1983). Presumably the next edition of his treatise will reflect this change in thinking."

 I can see no difference in the principles involved in restitution or constructive trust. Both are common law remedies to prevent an injustice. I would therefore find that the plaintiff banks are the *cestui que trust* to the funds held by Old Kent as trustee. Thus, there are no mutual debts and the right of set off does not exist.

Even if I would find that the funds belong to the estate, there are no mutual debts for another reason. As stated by 4 Collier on Bankruptcy Section 553.15[3] (15th Ed.1983):

"As previously indicated, it is essential that before a bank can exercise its right and use the chose in action created by the debtor's deposits as an offset against a claim against the debtor, the deposits in question must have been accepted in good faith in the ordinary course of business. The usual general deposits made on an open checking account subject to withdrawal on demand constitute the type of deposits that will more often be considered above suspicion. But if the deposits are not accepted in the ordinary course of business, or are procured, accepted or 'built-up' for the real purpose of permitting the bank to obtain a setoff, the deposits will be considered preferential in effect and the right of setoff is lost under section 553(a)(3). If the deposit is made 'for the purpose' of obtaining a right of setoff during the 90 days before bankruptcy or thereafter and while the debtor is insolvent, section 553(a)(3) condemns the deposit whether the malevolent 'purpose' is on the part of the debtor, on the part of the bank, or on the part of some third party transferring funds into the debtor's bank account.

"Section 553(a)(3) was enacted as a codification of the case law that evolved under former Sections 68(b) and 60. It prohibits the setoff of debts incurred by a creditor to the debtor for the purpose of obtaining a right of setoff, when the debt is incurred within 90 days of filing while the debtor was insolvent."

The deposits which created the fund in question were hardly made in the regular course of business. By that time Old Kent was aware of the check kiting which also warned it that payment of its outside claims against debtor was threatened. So it deliberately allowed the account to build up for the sole purpose of setting off its claim against the amount owed the debtor. Thus there was no mutuality of debts.

There being no mutuality, Old Kent would have no right of set off, Therefore,

It is ordered that the motion to dismiss is denied.