151 N.J. Super. 489 (1977)
376 A.2d 1352
GEORGE DEMOS AND CHRISTINE DEMOS, HIS WIFE, PLAINTIFFS,
v.
RAYMOND T. LYONS, JR., A/K/A R.T. LYONS, JR., DEFENDANT, AND SUMMIT SQUIRE, INC. A CORPORATION OF THE STATE OF NEW JERSEY, CRANFORD HALL NURSING HOME, A PARTNERSHIP, ANNA L. PIZZI, AND RAYMOND C. ZELTNER, PARTNERS, INTERVENORS. SOMERSET TRUST COMPANY, A BANKING COMPANY OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
GEORGE DEMOS, CHRISTINE DEMOS, RAYMOND T. LYONS, JR., A/K/A R.T. LYONS, JR., AND SUMMIT SQUIRE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 24, 1977.
*493 Mr. Daniel J. Matyola for Somerset Trust Company (Messrs. Wharton, Stewart & Davis, attorneys).
Mr. Phidias L. Pollis for George Demos and Christine Demos (Messrs. Pollis, Pappas & Dillon, attorneys).
Mr. Thomas F. Youngblood for Summit Squire, Inc. and Anna L. Pizzi and Raymond C. Zeltner trading as Cranford Hall Nursing Home (Messrs. Crummy, Del Deo, Dolan & Purcell, attorneys).
Mr. Richard J. Sauerwein for Raymond T. Lyons, Jr.
*494 BRODY, J.J.D.R.C., Temporarily Assigned.
This litigation arises out of the failure of George and Christine Demos (buyers) to go through with the purchase of the Summit Squire Restaurant  the business from Summit Squire, Inc. and the realty from Anna L. Pizzi and Raymond C. Zeltner, trading as Cranford Hall Nursing Home (sellers). Sellers contend that the terms of sale are embodied in a signed contract. Buyers characterize the writing as merely a memorandum of intent, subject to approval by their attorney who had not seen it before they signed. When the document was signed, and in accordance with its terms, buyers gave sellers' attorney Raymond T. Lyons, Jr. a $25,000 check drawn on Somerset Trust Company (the bank) to hold in escrow as a deposit. Bank paid the check even though doing so produced a $9,638.28 overdraft against buyers' account.
The dispute between the buyers and sellers over disposition of the deposit must be resolved at trial. Now before the court for summary adjudication are the bank's claims against the buyers for reimbursement and against the stakeholder Lyons for return of the $9,638.28. I granted the bank partial summary judgment against the buyers for reasons given in an oral opinion. See N.J.S.A. 12A:4-401(1), which permits a bank to charge an overdraft against its customer's account. More troublesome is the question of whether the bank should have judgment as well against the stakeholder. Sellers resist the bank's motion and make their own against the bank, seeking to foreclose it from retrieving the $9,638.28.
It appears from the bank's evidence that the check was presented to it for payment late in the afternoon of June 2, 1976. One of the buyers, George Demos, had been in the bank that morning and advised its personnel that he was buying the Summit Squire, a substantial restaurant business in downtown Summit. He requested the bank to prepare an amortization schedule of payments to be used, he said, in connection with private financing he had arranged to complete the purchase. When the check arrived the bookkeeper's *495 records disclosed that the buyers' account lacked $9,638.28 to cover it. It was too late in the day to learn from the bank's computer whether Demos had made a deposit to his account that morning to cover the check, and the bank was unable to reach him by telephone to determine whether he had done so. The check bore a notation "Deposit Summit Squire," which, with what they learned from Demos's appearance earlier that day, correctly led officers of the bank to conclude that it was the deposit on the buyers' purchase of the restaurant.
The bank had to decide whether to hold the check until the following day, dishonor it, or pay it. Because the check was for a large sum, the officers felt obliged by custom to advise Lyons' depositary bank that afternoon if it was going to dishonor it. So as not to embarrass their customer in this important transaction, the bank officers decided to pay the check. In fact, Demos had made no deposit to cover the check.
The bank contends that its claim is governed by Maplewood Bank and Trust Co. v. F.I.B., Inc., 142 N.J. Super. 480 (App. Div. 1976), where the court, dealing with a strikingly similar set of facts, gave the bank judgment because it had paid the check by mistake. The court applied N.J.S.A. 12A:3-418, which reads in pertinent part, that "* * * payment or acceptance of any instrument is final in favor of a holder in due course, or a person who has in good faith changed his position in reliance on the payment." The issue in Maplewood Bank was whether the stakeholder was a holder in due course. The court held he was not and therefore the bank was entitled to restitution because it had mistakenly paid the check.
The sellers have conceded that, as was the case in Maplewood Bank, they were not holders in due course and did not change their position in reliance on the payment. They contend, however, that Maplewood Bank does not control because that court did not consider the effect of N.J.S.A. 12A:4-213(1), which reads in part, "An item is finally paid by a payor bank when the bank has done any of the following, *496 whichever happens first: (a) paid the item in cash; or [etc.] * * *." The sellers argue that this provision bars restitution absolutely because of the absence of § 3-418 language that applies the bar only to protect a holder in due course or a person who relied on the payment.
Given the asserted conflict between the chapter 3 ("Commercial Paper") section and the chapter 4 ("Bank Deposits and Collections") section, the sellers contend that the chapter 4 section should prevail in accordance with N.J.S.A. 12A:4-102(1), which provides in part, "In the event of conflict the provisions of this Chapter govern those of Chapter 3 * * *." Their position is supported in White and Summers, Uniform Commercial Code (1972), §§ 16-2 and 16-3 at 519-529.
The word "final," as used to describe a payment, embraces two distinct concepts: one, a rule of law; the other, the time payment occurs.
As a rule of law, "payment is final" refers to the common law principle that one cannot recover back money paid, simply because of a change of mind. Its rationale is repose. Establishing the finality of a payment tends to assure stability in people's affairs. However, the law may compel restitution where there are competing considerations  such as fraud, duress and mistake  favoring the payor. When these considerations are raised, the evidence must be examined and equities balanced. Under some circumstances the payor's equities are insufficient to overcome those of the payee or others who may have relied in good faith on the payment. But even where no one has relied on the payment, the policy of repose may nevertheless prevail where the payor's asserted equity is based on facts he knew before payment and freely chose to disregard. Where the payor is denied restitution because others relied in good faith on the payment, he is said to be estopped. Where no one relied upon the payment but restitution is denied because the payor voluntarily paid knowing he had reason not to, he is said to have waived his right to restitution based on that reason. See Ross Systems v. Linden *497 Dari-Delite, Inc., 35 N.J. 329, 334 (1961), and Great American Ins. Co. v. Yellen, 58 N.J. Super. 240, 245 (App. Div. 1959).
As a description of the time when payment occurs, "payment is final" means that commercial paper is paid at the moment the payor performs some defined act, such as delivery of cash to the payee or making a book entry. The moment when payment has thus been "finalized" often becomes important to establish priorities (e.g., between an attaching creditor of drawer and a payee) or to establish when the payor must have a prevailing equity to get back the money.
Legislation that fails to distinguish between the normative and descriptive uses of the expression "payment is final" may cause confusion. Thus, a statute stating only that payment is final upon the happening of a particular event could either be stating a rule of law intended to change the common law by denying the payor restitution regardless of the equities, or merely be pinpointing the moment when payment occurs, thereby freezing priorities and compelling the payor to account absent prevailing common law equities.
The sellers give the former construction to § 4-213 (1), which reads as follows:
An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:
(a) paid the item in cash; or
(b) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement; or
(c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or
(d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement.
Upon a final payment under subparagraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item.
The sellers' interpretation of this section must be matched against legislative intent as gleaned from the language of the *498 statute and, if the language lacks clarity, as found in the policy objectives of the statutory scheme. Dvorkin v. Dover Tp., 29 N.J. 303, 313 (1959); N.J. Builders, Owners and Managers Ass'n v. Blair, 60 N.J. 330, 338 (1972).
The statutory language is oriented to time of payment, not legal effect of payment. "Finally paid" suggests that act in a sequence of acts which establishes the time of payment. The word "when" can refer only to time of payment. Looking beyond the section in question, one finds in the Uniform Commercial Code other sections that expressly deal with the legal effect of payment. For example, § 4-303 freezes priorities and § 3-418 deals with restitution. This view is expressed in New Jersey Study Comment No. 1 to § 4-213, which reads in part:
In other words, section 4-213 does not address itself to the problem of finality of payment  meaning, when can the bank not recover back money paid out. It deals only with the question of when checks are paid for limited purposes.
The sellers counter with the argument of White and Summers, supra at 525, that the last sentence of § 4-213(1)  "Upon a final payment under subparagraphs (b), (c) or (d) the payor bank shall be accountable for the amount of the item"  states a rule of law denying the payor bank common law restitution. The authors cite as support for this view Official Uniform Commercial Code Comment No. 7 to § 4-213, "The term `accountable' is used as imposing a duty to account, which duty is met if and when a settlement for the item satisfactorily clears."
However, read in its context, the word "accountable," not defined in the Code, does no more than put (b), (c) and (d) payments on a par with (a) cash payments. The sentence means simply that noncash payments have the same legal effect as cash payments. It does not follow that accountability as to (b), (c) and (d) payments should bar restitution as to any, much less all payments.
*499 This leads to the more fundamental point, that even if § 4-213(1) is considered a rule of law, its silence as to common law restitution cannot be read as abolishing it. The Code expressly retains common law principles except where displaced by a particular provision. N.J.S.A. 12A: 1-103 provides:
Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.
Legislative intent to change the common law must be clearly and plainly expressed. Fivehouse v. Passaic Valley Water Comm'n, 127 N.J. Super. 451, 456 (App. Div. 1974). See also, Union Beach Bd. of Ed. v. N.J. Ed. Ass'n, 53 N.J. 29, 46 (1968); Boileau v. De Cecco, 125 N.J. Super. 263, 268 (App. Div. 1973). Section 4-213(1) cannot displace common law restitution by implication from silence.
Finally, the sellers' construction of § 4-213(1) would lead to an absurd result and is therefore a construction to be avoided. State v. Provenzano, 34 N.J. 318, 322 (1961); Marranca v. Harbo, 41 N.J. 569, 574 (1964). See also, State v. Madewell, 117 N.J. Super. 392, 394 (App. Div. 1971), aff'd 63 N.J. 506 (1973). If § 4-213(1) absolutely deprived a payor bank of restitution, a payee could coerce or defraud the bank into making payment, yet be permitted to keep the money so obtained.
The court in Maplewood Bank read "mistake" into § 3-418 as a common law basis for restitution available to a payor bank unless, as that section provides, the payee was a holder in due course or someone relied in good faith on the payment. While the court in ordering restitution did not expressly consider the effect of § 4-213(1), I conclude that that section does not diminish a payor bank's common law right to restitution.
*500 Nonetheless, the result in Maplewood Bank is not dispositive of the result here. Maplewood Bank proceeded from the conclusion that the bank there paid because of an unspecified mistake of fact. From its own evidence in the case at bar, the bank here paid with full knowledge that, according to its bookkeeper, the buyers' account would thereby be substantially overdrawn. It thus assumed the risk of the buyers' credit. If computer corroboration of the account balance was necessary, then by its established procedures the bank either prematurely shut down the computer for the day or prematurely chose to pay. In either event, it assumed the risk that Demos did not cover the check and it thereby waived any claim of a mistaken belief that he had.
Restatement, Restitution, § 11(1) at 42 (1937), provides in part, "A person is not entitled to rescind a transaction with another if * * * he * * * intended to assume the risk of a mistake for which otherwise he would be entitled to rescission and consequent restitution." The court in George J. Meyer Mfg. Co. v. Howard Brass & Copper Co., 246 Wis. 558, 18 N.W.2d 468, 474 (Sup. Ct. 1945), held that restitution is denied a payor who assumed the risk of mistake. See also, Rabbit Ear Cattle Company v. Frieze, 80 N.M. 203, 453 P.2d 373, 374 (Sup. Ct. 1969). The bank's "mistake" was an improvident extension of credit to its customers. This is not a mistake of fact warranting restitution.
Whether the bank is considered to have paid despite learning from its bookkeeper the insufficiency of the buyers' account, or to have paid without determining the true state of the account from its computer, it assumed the risk that the account was insufficient and thereby waived any claim for restitution based on mistake. Even though a bank that pays an overdraft is thus denied restitution regardless of whether it checks its customer's account, there are still circumstances, presumably present in Maplewood Bank, where a genuine mistake entitling the bank to restitution might occur. Human error without the element of assumption *501 of risk and waiver would be such a case. E.g., Yonkers Nat'l Bank & Trust Co. v. Yerks & Co., 142 Misc. 640, 254 N.Y.S. 543 (Sup. Ct. 1931), aff'd 234 App. Div. 885, 254 N.Y.S. 548 (App. Div. 1931) (bookkeeper checked account of wrong customer with nearly identical name). Unanticipated computer error might be another. While opportunities for restitution to a payor bank creating an overdraft in its customer's account may be few, this is not inequitable given a bank's ability to verify its customer's account before payment and given its right to reimbursement from the customer under N.J.S.A. 12A:4-401(1).[1]
Somerset Trust Company's motion for partial summary judgment is denied. The motion of Summit Squire, Inc., and Anna L. Pizzi and Raymond C. Zeltner trading as Cranford Hall Nursing Home is granted.
NOTES
[1] N.J.S.A. 12A:4-407(c), which subrogates a payor bank to the rights of the drawer against the payee or other holder, does not apply. A payor bank may charge its customer's account for an overdraft under N.J.S.A. 12A:4-401(1) only if the item "is otherwise properly payable." Where a customer/drawer issued a timely stop order, a payor bank that nevertheless pays is stuck except as it may qualify for subrogation under N.J.S.A. 12A:4-407(c). To qualify under that section, the bank would have had to pay "under circumstances giving a basis for objection by the drawer" (i.e., N.J.S.A. 12A:4-401(1) reimbursement is unavailable) and the payment would have had to be an "unjust enrichment" of the payee. Neither requisite appears in this case.