674 P.2d 323

**GREAT WESTERN BANK & TRUST, a corporation via civil contract, Plaintiff Counter-defendant Appellant,**

v.

**Leon NAHAT, Defendant Counter-claimant Appellee.**

Nos. 1 CA–CIV 5867, 1 CA–CIV 5919.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 11, 1983.

Reconsideration Denied Dec. 6, 1983.

Minkler & Kirschbaum by Charles E. Cruise, and Law Offices of Dale L. States by Dale L. States, Phoenix, for plaintiff counterdefendant appellant.

Thur & Preston by Calvin C. Thur, Scottsdale, for defendant counterclaimant appellee.

## OPINION

KLEINSCHMIDT, Judge.

This case involves a question of whether the payee of a dishonored check, or instead the bank which was negligent in its attempt to collect the check, should bear the loss of the check's dishonor. A $10,000 check dated November 6, 1978, was drawn by a Frank Ross payable to appellee Leon Nahat. Nahat testified that after receiving the check Ross requested that he wait a few days before negotiating it so that "it would be more comfortable for him [Ross]." He also testified that Ross never actually informed him that the check would not clear but admitted that he knew Ross was having financial difficulties and that he anticipated problems in collecting the funds.

Great Western alleges that Nahat had been instructed not to deposit the check; that Nahat knew of Ross' financial difficulty; and knew that the check would not be honored. There is no conclusive evidence that Nahat knew there were insufficient funds in the Ross account on either December 22, 1978, or January 5, 1979. The sequence of relevant events is set forth below.

On November 13, 1978, Nahat attempted to deposit the check with Great Western. When the bank manager discovered the check was drawn on insufficient funds, she refused to accept the check and informed Nahat of the problem and returned the check.

Between November 13 and December 22, 1978, Nahat contacted Ross three times to inquire about depositing the check. Each time Ross told him to wait "a few more days." Apparently, out of frustration and because of his own financial difficulties, Nahat presented the check to Great Western for the second time on December 22, 1978. At this time, a Great Western employee informed Nahat that he would have to wait 10 days for the check to clear. On January 5, 1979, Nahat called Great Western and asked if the check had cleared. A bank employee mistakenly informed him that the check had cleared. Based on this assurance, Nahat wired $5,000 to his account at Manufactures Hanover Trust Company, transferred $3,000 to his mother's account and deposited $2,000 in his own savings account at Great Western.

At some time between January 5, and January 9, 1979, Great Western realized it had mistakenly paid Nahat and, according to Great Western, it notified Nahat of the mistake by January 9th. Nahat testified that he first received notice on January 9th but claims that the first notice he had came from Manufactures Hanover Trust Company when it refused to release his funds.

On January 9th Great Western requested Manufactures Hanover Trust Company to place a hold on the $5,000 that had been transferred to Nahat's account. Manufac-

tures honored the request and Great Western was paid the $4,000 that remained in the account. On January 9th Great Western also applied the $2,000 remaining in Nahat's savings account to reduce its claim. Thus, as of the date of trial, Great Western had recovered $6,000 of the $10,000 disbursement. When Nahat refused to reimburse Great Western for the remaining $4,000 the bank filed suit.

The case was tried before a jury. At trial Great Western argued that the case should be submitted on theories of fraud as provided for in A.R.S. § 12–671, on charge back [1] as provided for in A.R.S. § 44–2621, and on restitution. Nahat's answer denied all allegations and set forth numerous affirmative defenses and counterclaims for negligence, breach of fiduciary duty and extortion. During the trial Nahat was allowed to amend his counterclaim to include a claim for fraud. At the close of the plaintiff's case the trial court granted Nahat a directed verdict on Great Western's claim of fraud, finding no violation of A.R.S. § 12–671. This order has not been appealed.

At the close of all the evidence, the trial judge granted directed verdicts for Great Western (1) on its claim for restitution, (2) on Nahat's counterclaim for fraud, and (3) on Nahat's counterclaim for extortion. The judge then sent the case to the jury on the issues of Great Western's negligence and Great Western's breach of fiduciary duty. The jury awarded Nahat $12,000 on the negligence issue.

After the jury had returned its verdict the judge vacated all orders granting directed verdicts. He requested further briefing by both sides and took all matters under advisement. After consideration, the court held that the case was controlled by A.R.S. §§ 44–2621(A) and 44–2203(E). We note that there is no A.R.S. § 44–2203(E) and it appears that the judge was referring to A.R.S. § 44–2603(E) which limits damages to the amount of the item in the

1. A charge back is a debit to as depositor's account that offsets a previous credit that was

not collected. Webster's Third New International Dictionary 377 (1969).

absence of bad faith, a conclusion which is supported by reference to that provision elsewhere in the judgment. The court then held that as a matter of law Great Western was a collecting bank as defined by A.R.S. § 44–2605(4) and noted that it had failed to give notice to Nahat as required by statute. For this reason the court held that Great Western was not entitled to a charge back *or* a refund. As a result the court granted a directed verdict for Nahat on the $4,000 restitution claim. It also vacated the jury's award of $12,000 finding that Nahat had failed to prove Great Western's bad faith and therefore the award was limited by A.R.S. § 44–2603(E). It then entered judgment in favor of Nahat for $6,000, apparently the amount of the check, *i.e.*, $10,000, minus the amount Nahat retained from the check or $4,000.

## RIGHT TO RESTITUTION

Great Western concedes that it is not entitled to a charge back because it failed to notify Nahat of the check's dishonor within the required time. *See* A.R.S. § 44–2621. It argues that this does not preclude recovery under a theory of restitution.

■ A threshold issue is whether restitution was adequately pleaded. Nahat has argued throughout that Great Western failed to sufficiently plead a claim for restitution. Early in the proceedings Nahat informed the court that nothing in the complaint indicated the bank sought restitution. The trial court expressly concluded to the contrary. While the complaint does not mention "restitution" it is labeled as an action on a contract, recites that money was paid to Nahat on a check which was dishonored, acknowledges that part of the mistaken payment had been recovered and requests judgment for the unrecovered balance of $4,000. It specifically alleges that Nahat knew or should have known that the check was drawn on insufficient funds. We believe, particularly in view of the fact that the issue was clarified early in the trial, that the defendant had sufficient notice of the nature of the bank's claim to present an

adequate defense. We have not overlooked the fact that at a later stage in the trial the judge expressed concern as to whether the defendant had sufficient notice of the claim for restitution to afford him a fair opportunity to prove a change in position as a defense. The trial judge did not pursue that doubt to a resolution. Nahat's counsel alluded generally to different affirmative defenses he would have raised had he known restitution was sought but he neither made an offer of proof concerning them or even specified what such defenses would be. Under the circumstances the bank should be permitted to pursue a theory of recovery in restitution.

■ Since restitution was adequately pled, we must next determine whether charge back pursuant to A.R.S. § 44–2621(A) is an exclusive cause of action. We begin by recognizing that common law principles are incorporated into the commercial law of Arizona by A.R.S. § 44–2203 unless displaced by a particular statutory provision.

Great Western cites A.R.S. § 44–2621(E) to support its position that the remedy of restitution should be recognized. That statute provides:

A failure to charge-back or claim refund does not affect other rights of the bank against the customer or any other party.

By its terms A.R.S. § 44–2621(E) expressly recognizes that the right to charge back is not an exclusive remedy.

Other jurisdictions have held that U.C.C. § 4–212(1), which is identical to A.R.S. § 44–2621(A), is not the sole remedy. In *Ratner v. Central National Bank,* 414 So.2d 210 (Fla.App.), *review denied,* 424 So.2d 762 (Fla.1982), the court addressed the issue of how U.C.C. § 4–212, which is identical to A.R.S. § 44–2621, related to a contract claim. The promoter of a corporation had signed a contract with the bank in which he warranted each Master Charge sales draft and agreed to be liable for certain types of improper sales drafts. In one of his defenses to the bank's attempt to assert a claim under this contract, the promoter alleged

that the trial court failed to determine whether the bank had complied with Section 674.212, Florida Statutes (1979), which is identical to A.R.S. § 44–2621. The court held:

> We find the issue of whether Central Bank had the right to charge-back the unauthorized sales drafts to Stereo Corner's account irrelevant to the issue of Central Bank's right to sue Ratner [the promoter] as individually liable on the contract. *See* Section 674.212(5), Florida Statutes (1979).

414 So.2d 210, 213.

In *Bank of Commerce v. De Santis,* 114 Misc.2d 491, 451 N.Y.S.2d 974 (1982), the bank had made a charge back after orally notifying its customer within the statutory time. The customer argued that oral notification was insufficient and thus the bank failed to provide notification within the required time. The court held:

> [A]ssuming the right of charge back was not available to plaintiff, that would not affect plaintiff's right to recover its loss in a plenary action. Section 4–212(5) U.C.C. expressly provides so.

451 N.Y.S.2d at 980. Section 4–212(5) U.C.C. referred to in the quote above is identical to A.R.S. § 44–2621(E).

In *First National Bank v. Nunn,* 628 P.2d 1110 (Mont.1981) the court addressed the issue of how U.C.C. § 4–212 related to the warranty provision of the U.C.C. Mrs. Nunn was married and had a separate bank account out of which she managed the household affairs. After each pay period she deposited her husband's paycheck into her account. Shortly before she separated from her husband she deposited one of his paychecks without his endorsement. After separation she withdrew all funds from her account. Her husband informed his employer that the endorsement was forged and the employer refused to pay on the check. The bank then attempted to recover from the wife under two theories. The first theory was charge back as provided for in U.C.C. § 4–212. The court held the bank had lost its right to proceed under this section. The second theory was a breach of warranty theory as set forth in the U.C.C. Nunn defended, arguing that charge back was the exclusive remedy. The court held:

> The loss of the right to charge back or refund under Section 30–4–212, MCA, does not preclude First National Bank from seeking to hold its customer liable for breach of her warranty pursuant to section 30–4–207.

628 P.2d at 1115. Section 30–4–212 MCA referred to in the above quote is identical to A.R.S. § 44–2621.

In light of these cases we hold that the common law remedy of restitution was available to the bank. We agree with Great Western and find the *Restatement of Restitution* § 34 controlling. It provides:

> The holder of a bill of exchange or promissory note who, under the rules stated in §§ 30–33, otherwise would be entitled to retain the amount received in payment thereof, is under a duty of restitution to the payor who paid because of a mistake of fact, if
>
> (a) he made a misrepresentation causing the mistake, or
>
> (b) at the time of payment he suspected or had reason to know of the mistake of the payor, except where before such time he had acquired a contractual right to receive payment, or
>
> (c) having received payment, he learned facts from which he had reason to know of the payor's mistake, and failed to use care to notify the payor, to the extent that the payor has been thereby prevented from obtaining restitution from a third person.

Nahat contends, however, that recognition of this common law remedy would displace A.R.S. § 44–2621(A) and the notice requirements found within. Nahat cites *Brannon v. First National Bank,* 137 Ga. App. 275, 223 S.E.2d 473 (1976) for this proposition. In *Brannon* the court was faced with a factual situation in which a defendant named Holzman presented counterfeit U.S. Treasury Bills to a bank. The bank sued Holzman for breach of warranty and unjust enrichment. The court expressly found that U.C.C. art. 4 and thus U.C.C.

§ 4–212(5) were applicable but the court refused to allow a claim of unjust enrichment. The court stated:

> Neither was the grant of the summary judgment against the Holzmans authorized on the theory of unjust enrichment. It is true that the UCC provides that, *unless displaced by its particular provisions,* the principles of law and equity shall supplement its provisions. [Citation omitted] However, the Commercial Code spells out which specific warranties various parties make by operation of law, so that a purchaser for value may know in advance his available remedies. This is in accordance with one of the underlying purposes and policies of the Act, "to simplify, clarify and modernize the law governing commercial transactions." [Citation omitted] The plaintiff bank's remedy in the present case lies in the applicable warranties. To allow recovery via unjust enrichment would make the specified warranties meaningless and impair the negotiability of securities.

137 Ga.App. at 278, 223 S.E.2d at 476 (emphasis in original).

While *Brannon v. First National Bank, supra,* is a correct statement of the law, it does not preclude the result at which we arrive. *Brannon* correctly states that the underlying purpose of the U.C.C. is "to simplify, clarify and modernize the law governing commercial transactions." *Id.* The purpose of the U.C.C. is to safeguard "[t]he interest of society in an orderly banking system, with the rights and liabilities of participants in the world of finance spelled out in advance." 1 Andersen, *Uniform Commercial Code,* § 1–102:46 (3rd ed. 1981). In our opinion recognition of the remedy of restitution as found in § 34 of the *Restatement* will not interfere with this policy. The U.C.C. guarantees that an innocent holder, *i.e.,* a holder in due course, is assured payment on an instrument if it is not dishonored within the statutory period. Section 34, on the other hand, allows an injured innocent party to proceed against the wrongdoer and recover any benefit the wrongdoer has received. To allow restitution in accordance with § 34 of the *Restate-*

*ment* would not affect the negotiability of this instrument or the rights of an innocent holder of that instrument.

*Brannon* does not apply to the facts of this case because in *Brannon* there is no indication of any allegation that Holzman had knowledge that the bills were counterfeit. As such, § 34 of the *Restatement* would not apply because it requires knowledge of the mistake. Holzman, as the court correctly held, would not be able to foresee the extent of her liability if she was liable on an unjust enrichment theory. Thus, the U.C.C. policy of certainty, as set forth in the warranty and charge back provision, would be defeated. In the present case, Great Western alleges that Nahat had knowledge of the mistake made by Great Western. If Great Western is correct, Nahat may be characterized as a knowing wrongdoer. Section 34 of the *Restatement* is available to prohibit Nahat from benefiting from his wrongful act. It would not, however, interfere with the ability of any prior or subsequent innocent holder of the check to take free from an unjust enrichment claim.

■ Nahat also claims that Great Western cannot recover because it failed to return the dishonored check to Nahat. The *Restatement of Restitution* § 65, requires that in cases of fraud and mistake the party seeking restitution must return the other party to its prior position before restitution will be awarded. In the present case, Nahat apparently requested the check be returned. We find that under the facts of this case Great Western is not precluded from seeking restitution. There was no evidence that Nahat was in any way harmed by Great Western's refusal. Nahat could have brought an action against Ross without being in physical possession of the check. In addition, there is no evidence that Great Western is unable or has refused to return the check once Nahat has reimbursed it for money paid on the check.

## DAMAGES

■ The next issue revolves around the propriety of the damage award in favor of

Nahat. The jury awarded Nahat $12,000 in damages on the negligence claim. The trial court, citing A.R.S. § 44–2603(E) as authority, reduced the award to $6,000. The trial court determined that by the terms of A.R.S. § 44–2603 the maximum amount that could be awarded for negligence was $10,000, the face amount of the check, because it properly concluded that the evidence would not support a finding of bad faith on the part of the bank. The trial court then reduced this by the amount retained by Nahat from the proceeds of the check. Great Western contends that the trial court misinterpreted A.R.S. § 44–2603(E). It argues that the statute precludes Nahat from recovering any damage award. This section provides:

> The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence.

While the statute's wording leaves something to be desired, we interpret it to mean that absent bad faith the measure of damages is the face amount of the check less anything that Nahat could not have recovered even if the bank had not been negligent. Nahat presented no evidence that he could have recovered any money from Ross if Great Western had properly notified him and he admitted that he had considered pursuing the matter and rejected it as futile. Since the bank's negligence was not the cause of Nahat's loss measured by the statutory standard he is not entitled to recover anything on his claim.

We have considered Nahat's remaining arguments: That the trial court erred when it directed a verdict on the issue of fraud, that Nahat is entitled to consequential damages because of Great Western's failure to act in good faith, and that Great Western is not entitled to a set off. These arguments have no merit and do not warrant further consideration. We decline to award attorney fees as requested by Great Western.

For the foregoing reasons it is ordered vacating the judgment of the trial court and remanding this cause for retrial on Great Western's claim against Nahat for restitution.

CONTRERAS and FROEB, JJ., concur.