**MORGAN GUARANTY TRUST COMPANY OF NEW YORK, a New York Corp., Plaintiff,**

v.

**AMERICAN SAVINGS AND LOAN ASSOCIATION, a California Corp., Defendant.**

**AMERICAN SAVINGS AND LOAN ASSOCIATION, a California Corp., Third-Party Plaintiff,**

v.

**The CHASE MANHATTAN BANK, N.A., Third-Party Defendant.**

No. CV–83–6925–AHS.

United States District Court,
C.D. California.

March 26, 1985.

Richard K. Simon, Randall S. Rothschild, Eric L. Dobberteen, Kadison, Pfaelzer, Woodard, Quinn & Rossi, Los Angeles, Cal., for plaintiff.

Richard H. Cooper, William H. Jennings, Freshman, Mulvaney, Marantz, Comsky, Kahan & Deutsch, Beverly Hills, Cal., for defendant and third party plaintiff.

Roger A. Ferree, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for third party defendant Chase Manhattan Bank, N.A.

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

STOTLER, District Judge.

### SUMMARY

This action involves two bearer notes issued by plaintiff Morgan Guaranty Trust Company of New York (hereinafter, Morgan), each in the sum of $5,000,000 and

evidencing an indebtedness of the Manville Corporation (hereinafter, Manville). The notes were purchased by defendant American Savings and Loan Association (hereinafter, American) when the maturity date was less than two months away. Before maturity, however, Manville filed a petition for bankruptcy which invoked the stay provisions of the Bankruptcy Act. On the date of maturity, American, through. its agent, third-party defendant Chase Manhattan Bank, N.A. (hereinafter, Chase), presented the two Manville notes to plaintiff for payment. Plaintiff paid the $10,-000,000, notwithstanding special measures which had been instituted by it to monitor all Manville negotiable instruments.

Plaintiff filed suit to recover the $10,-000,000, alleging counts of conversion, unjust enrichment, and money had and received. Defendant answered and later filed a third-party claim against Chase on the theory that Chase may have agreed, purportedly on American's behalf, to repay plaintiff, but was without authority to do so.

Morgan and American brought cross-motions for summary judgment, while Chase filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. American then moved for partial summary judgment on the same issues raised by Chase.

The major question presented by these motions is whether, in a transaction governed by the Uniform Commercial Code, a bank which mistakenly pays on notes covered by insufficient funds has any right of restitution against a payee who presented the notes as a holder in due course.

The Court concludes that the Uniform Commercial Code compels a holding that the "final payment rule" embodied in

U.C.C. § 3–418 bars recovery by a plaintiff on its claims for equitable relief.

Judgment in favor of defendant is granted.

### FACTS

The facts necessary to resolution of these motions are not in dispute.

On July 8, 1982, defendant American purchased from Goldman, Sachs & Co. (hereinafter, Goldman, Sachs) two promissory notes of the Manville Corporation, each with a face value of $5,000,000 and each made payable on September 2, 1982 at plaintiff Morgan. The notes were delivered by Goldman, Sachs to Chase, which debited American's account by the $9,760,-833.33 purchase price of the notes, paid the sum to Goldman, Sachs, and held the notes for American until their maturity.

On August 26, 1982, Manville filed a Chapter 11 petition in bankruptcy.[1] Morgan, which held several Manville accounts, immediately effected special procedures to process the notes it anticipated would be presented on those accounts. The procedures were designed to ensure proper disposition on each and every check presented in compliance with the applicable New York Clearing House rules, and to involve bankruptcy counsel in all payment decisions. In the days following the Chapter 11 filing, Morgan received into these channels hundreds of items drawn by Manville. Many were timely returned unpaid, many others were paid despite Manville's bankruptcy and despite the fact that payment caused an overdraft.

On September 2, 1982, without specific instruction from American, Chase presented the Manville notes to Morgan through

---

1. The filing invoked the automatic stay provisions of 11 U.S.C. Section 362, which provides:
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title ... operates as a stay, applicable to all entities, of—

 . . . . .

 (3) any act to obtain possession of property of the estate or of property from the estate

 . . . . .

 (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title...
Concomitantly, the Bankruptcy Court issued a restraining order similar, in pertinent part, to the Section 362 stay.

the New York Clearing House 2:00 a.m. exchange. At that time, the aggregate of available funds in all of Manville's accounts was only $1,398,282.60.

When the Manville notes passed through the New York Clearing House check exchange[2] they became subject to the Clearing House rules. Under these rules, notes presented through the 2:00 a.m. exchange are subject to provisional settlement at 10:00 a.m. that same day. Once made, the provisional settlement can be revoked in one of only two ways: first, the settling bank may physically return the notes to the presenter before 3:00 p.m. that day; second, the settling bank may inform the presenter before 3:00 p.m. that the notes will be dishonored and return the notes through the 11:00 p.m. exchange. Rule 6b, Rules Governing the Return of Items Received through the Exchange of the New York Clearing House. The Morgan employees who usually handled such notes were well-versed in the Clearing House rules and deadlines. However, the special channels established by Morgan to handle the Manville accounts bypassed these employees and instead put the Manville notes in the hands of employees unfamiliar with these rules.

At 10:00 a.m. in the morning of September 2, Morgan effected a provisional settlement of $10,000,000 in Chase's favor. In accordance with Morgan's procedures, the Manville notes were forwarded to Cathleen O'Daniel, who, as head of Morgan's Deposit Accounting Department, was responsible for monitoring the Manville accounts. O'Daniel tried twice between 10:00 and 12:00 that morning to contact David Deming, a Morgan official, for instruction in dealing with the notes. Deming, in turn, attempted contact with special counsel handling the Manville bankruptcy procedures for Morgan. Deming ultimately received instructions not to honor the Manville notes. Unfortunately, O'Daniel did not receive her reply until 4:00 p.m.—well past

the 3:00 p.m. deadline for dishonoring such notes—when Deming told her to "bounce" the notes. O'Daniel immediately undertook to do so, but it was then too late.

On September 3, Chase transferred the $10,000,000 credit to American's account and notified American of the transaction. On the same day, Morgan demanded repayment of the $10,000,000, first from Chase as agent for American, and then from American itself. American refused to return the payment.

On October 26, 1983, Morgan filed a complaint against American, asserting causes of action for (1) conversion, (2) unjustment enrichment, and (3) money had and received. American answered, and, on May 4, 1984, filed a third-party complaint against Chase seeking indemnity in the event that American would be found liable on any promise, made by Chase as its agent, to return the money to Morgan.

American and Morgan subsequently filed cross-motions for summary judgment. Chase filed a motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). American further moved for partial summary judgment on the complaint in support of the very issues raised in Chase's motion. All motions were presented and heard contemporaneously, but only the cross-motions for summary judgment are considered in this opinion.

## DISCUSSION

American has moved for summary judgment as to all three claims of Morgan's complaint. Summary judgment is properly granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Aydin Corp. v. Loral Corp.,* 718 F.2d 897, 902 (9th Cir.1983).

---

**2.** Morgan and Chase are members. American is not.

1. *Unjust Enrichment and Money Had and Received (Claims 2 and 3)* [3]

American posits four alternative theories why Morgan has no equitable right to recover its money paid and, thus, why Claims 2 and 3—for unjust enrichment and money had and received—must be dismissed: first, that Morgan's payment on the Manville notes was not the result of a "mistake," but was instead voluntary [4]; second, that by signing the notes as agent at the date of their issuance, Morgan accepted the notes and assumed an independent obligation to pay as guarantor [5]; third, that even if the payment was the result of Morgan's mistake of fact, New York common law has never allowed equitable recovery of such payments [6]; and, fourth, even if such recovery were permitted at common law in New York, that the New York Uniform Commercial Code bars all equitable recovery of such payments. Because the Court finds the fourth argument dispositive, resolution of the merits of the other arguments is unnecessary.

American's argument centers on Section 3–418 of the New York U.C.C., which provides:

> Except for recovery of bank payments as provided in the Article on Bank Deposits and Collections (Article 4) and except for liability for breach of warranty on presentment under the preceding section, payment or acceptance of any instrument is final in favor of a holder in due course, or a person who has in good faith changed his position in reliance on the payment.

The parties dispute the effect of the section and the circumstances under which that effect is brought to bear on a commercial transaction. Morgan contends that the preconditions to application of Section 3–418 have not been met in this case. Morgan further argues that, if the section does apply to this case, that the N.Y.U.C.C. preserves common law restitutionary rights for a bank that has mistakenly paid on an NSF note. American responds that this

---

3. The parties appear to agree that the dispute on Claims 2 and 3 is governed by the law of New York.

4. If Morgan had paid the notes voluntarily rather than by mistake, it would be ineligible for equitable relief. *See, e.g., Demos v. Lyons,* 151 N.J.Super. 489, 376 A.2d 1352 (1977). American argues that Morgan actually volunteered payment in the hope that Manville would reimburse them later. Alternatively, American argues that Morgan constructively volunteered payment on the notes by allowing the notes to pass into the hands of employees ignorant of the deadlines rather than those who were familiar with them.

 With regard to the first argument, American has presented no evidence that Morgan formed a conscious plan to pay the notes and seek repayment. To the contrary, all evidence indicates that Morgan knew that Manville would be unable to pay on the notes and that the failure to meet the 3:00 p.m. deadline was inadvertent. With regard to the second argument, American's discussion is primarily based on contract law. At least some courts have indicated that a party will not be denied equitable relief though its error was caused by its own negligence if, in fact, the error was made in good faith. *Gulf Oil v. Lone Star Producing Co.,* 322 F.2d 28 (5th Cir.1963).

5. American's argument seems to be that Morgan, by signing the notes on the date of their issuance, immediately became independently obligated to the holder. However, the primary case upon which American relies, *Dziurak v. Chase Manhattan Bank, N.A.,* 44 N.Y.2d 776, 406 N.Y.S.2d 30, 377 N.E.2d 474 (1978) is inapposite to this case. *Dziurak* involved a cashier's check, an instrument on which one bank can be both drawer and drawee. The court merely held that the issuing bank had already accepted the check as drawer at the time of issuance. In contrast, the instant case involves a liability that ran from Manville to American, made payable through Manville's account at Morgan.

6. American cites *Manufacturers Hanover Trust Co. v. Aetna Life & Casualty Co.,* N.Y.L.J., April 12, 1984, at 2, col. 1 (N.Y.Co. April 12, 1984) as support for this argument. *Manufacturers* is inapposite to the instant case because the court there found that the bank had volunteered payment with the expectation that it would recover its payment from the debtor. Because there was no mistake of fact concerning the payment—only a unmaterialized hope that the debtor would pay—the court found that there could be no action for restitution.

 Other New York cases support the contention that a holder in due course has a duty to repay when he has reason to know that a payment was made by mistake. *See, e.g., Manufacturer's Trust Co. v. Diamond,* 17 Misc.2d 909, 186 N.Y.S.2d 917, 919 (N.Y.Sup.Ct.1959) ("There is no reason why a bank ... should be denied recovery of money paid by mistake in circumstances which would justify recovery by anyone else.").

transaction falls within the ambit of Section 3–418, and that the section acts to bar restitutionary recovery of a final payment by Morgan.

### a. *Criteria for Application of Section 3–418*

By its terms, Section 3–418 requires that two conditions be met before the "final payment" rule takes effect. First, there must be a "payment or acceptance." Second, the payment must be in favor of a holder in due course or good faith relier.

### (1) *Payment*

■ The "payment" referred to in Section 3–418 is defined in N.Y.U.C.C. Section 4–213:

> (1) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:
>
> . . . . .
>
> (d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement.

As discussed above, Morgan made a provisional settlement for the Manville notes at 10:00 a.m. on September 2, as specified by the New York Clearing House Check Exchange Rules; it failed to revoke the settlement by the 3:00 p.m. deadline provided by those same rules. Thus, the notes were "finally paid."[7]

### (2) *Holder in Due Course*

"Holder in due course" is defined in N.Y. U.C.C. Section 3–302:

> (1) A holder in due course is a holder who takes the instrument
>
> (a) for value; and
>
> (b) in good faith; and
>
> (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.
>
> (2) A payee may be a holder in due course.

■ The parties agree that, when American took the notes on July 8, 1982, it became a holder in due course: American paid full value for the notes and had no reason to know that Manville soon would be filing in bankruptcy.[8] Yet Morgan apparently argues that American lost its status as holder in due course by allowing Chase to present the notes on September 2 with full knowledge of Manville's intervening bankruptcy filing and the stay that automatically became effective on that filing. *See* 11 U.S.C. Section 362.

Unfortunately for Morgan, there is nothing in Section 3–302 or elsewhere in the Code that indicates that a person can be stripped of his status as a holder in due course by subsequent events. Indeed, Section 3–302 by its terms considers only the circumstances extant at the time of taking. It is thus irrelevant for purposes of Section 3–418 that American and/or Chase may

---

**7.** As Morgan and American point out in their papers, there has been some difference of opinion concerning the meaning of Section 4–213. Some authorities have concluded that Section 4–213 announces a rule of final payment, barring all restitutionary actions for monies "finally paid." *See Kirby v. First & Merchants National Bank,* 210 Va. 88, 91 n. 4, 168 S.E.2d 273 (1969); *and* J. White and R. Summers, Handbook of the Law Under the Uniform Commercial Code (2d Ed.1980), Section 16–4. Others have concluded that the section does not bar actions in restitution, but marks the point at which a superior equitable right must be asserted by the payor to regain possession of the payment. *See National Savings and Trust Co. v. Park Corp.,* 722 F.2d 1303 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1916, 80 L.Ed.2d

464 (1984); *and Demos v. Lyons,* 151 N.J. Super. 489, 492, 376 A.2d 1352 (1977) ("The moment when payment has thus become 'finalized' [under 4–213] often becomes important to establish priorities or to establish when the payor must have a prevailing equity to get back the money."). Since Section 3–418 is also applicable to this case, however, the Court need not consider whether Section 4–213 announces the final payment rule.

**8.** Manville's Chapter 11 filing apparently came without warning to those outside the company. Morgan concedes that American could not have had notice on July 8, 1982, that any such filing was imminent.

have learned after the July 8, 1982, purchase of the notes of Manville's August 26, 1982, Chapter 11 filing.

### b. *Effect of Section 3–418*

■ American contends that Section 3–418 bars restitutionary action on a note finally paid to a holder in due course. Morgan, noting that N.Y.U.C.C. Section 1–103 authorizes the use of equitable principles available at common law "[u]nless displaced by the particular provisions of this Code," counters that Section 3–418 does not displace equitable rights of recovery for a payment made under a mistake of fact.[9]

Morgan cites four cases in support of its contention. The first two, *Demos v. Lyons,* 151 N.J.Super. 489, 376 A.2d 1352 (1977), and *National Savings and Trust Co. v. Park Corp.,* 722 F.2d 1303 (9th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1916, 80 L.Ed.2d 464 (1984), do nothing to help Morgan's case. *Demos* involved a dispute among a payee bank, the bank's customer who had written an NSF check, and the presenter of the check. The presenters concededly had not taken the check for value and acknowledged that "they were not holders in due course and did not change their position in reliance on the payment." 151 N.J.Super. at 495, 376 A.2d 1352. Since the defendants had not met the threshold requirements of Section 3–418, the *Demos* court never even reached the issue of the possible effect of the section on that transaction.

The *Park* case similarly provides no support. There, as in *Demos,* the court began its analysis by finding that the payee was not a holder in due course. Indeed, the court reasoned that the payor had a restitutionary right *only* because "no value had been given [by the payee] for the instrument." 722 F.2d at 1306.

The final two cases cited, *Bank Leumi Trust Co. v. Bally's Park Place, Inc.,* 528 F.Supp. 349 (S.D.N.Y.1981), and *Greater Western Bank & Trust v. Nahat,* 138 Ariz. 260, 674 P.2d 323 (Ariz.App.1983), although somewhat ambiguous, ultimately provide no more support for Morgan's position. *Bank Leumi* involved a recovery action by a payor bank that mistakenly paid an NSF check. The court allowed the payor to maintain its action, announcing that:

> [Section 3–418 applies] to interbank settlement procedures, and not to subsequent actions for restitution. A contrary reading ... would be inconsistent with Section 1–103, which retains the common law governing mistake. It would lead to the unintended result of allowing a payee, unjustly, to retain monies improperly obtained.

528 F.Supp. at 354.

Read by itself, this passage seems to indicate that Section 3–418 has no effect on any action for restitution. But closer examination of the *Bank Leumi* decision indicates that the discussion of Section 3–418 is limited to the case of a payee who is not a holder in due course. Indeed, the parties apparently did not argue the issue, and the court observed in a footnote:

> Concepts having to do with bona fide holders of negotiable paper in due course without notice are not involved in this litigation. See New York U.C.C. Section 3–302.

528 F.Supp. at 350, n. 1. The *Bank Leumi* payee, then, could not avail himself of the protections of Section 3–418, since he could not show that he met its threshold requirements.

Like *Bank Leumi,* *Nahat* involved a restitutionary action by a bank that mistakenly paid on a check that the payee suspected was NSF. Reviewing the case on appeal from summary judgment for the defendant, the court found that a restitutionary

---

**9.** N.Y.U.C.C. Section 1–103 provides in full:
Unless displaced by the particular provisions of this Code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and

agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

action might properly be maintained if the payee was not a holder in due course. The court apparently remanded to determine whether the defendant had ever attained the status of holder in due course. Only if he had would summary judgment be appropriate: "The U.C.C. guarantees that an innocent holder, i.e., a holder in due course, is assured payment on an instrument if it is not dishonored within the statutory period." 138 Ariz. at 265, 674 P.2d 323. The *Nahat* court, like those in *Demos, Park,* and *Bank Leumi,* did not proceed beyond the threshold question of whether the payee was a defendant contemplated by the language of Section 3–418, and thus did not consider the import of that section.

More persuasive is the position urged by American: even if New York allowed restitutionary recovery of such payments at common law, the drafters of Section 3–418 have ensured that a drawee bank that pays on a forged or NSF check now has "a rocky road to restitutionary recovery." J. White and R. Summers, Handbook of the Law Under the Uniform Commercial Code (2d Ed.1980) Section 16–2, p. 610. Eschewing a more liberal policy toward equitable relief, they adopted instead the common law doctrine of *Price v. Neal,* 3 Burr. 1354 (1762), "under which a drawee who accepts or pays an instrument on which the signature of the drawer is forged is bound on his acceptance and cannot recover his payment." Official Comment 1 to U.C.C. Section 3–418.

The rule of finality announced in *Price v. Neal* and embraced by the drafters of Section 3–418 has been justified by several policies, two of which are cited in the official comments. First, the "traditional justification . . . is that the drawee is in a superior position to detect a forgery" or an NSF

check because he has the drawer's signature or information regarding the status of the drawer's account. Official Comment 1 to U.C.C. § 3–418. The rule also facilitates the practical operation of the banking industry because it allows the parties to end "the transaction on an instrument when it is paid rather than reopen and upset a series of commercial transactions at a later date." *Id.* Accordingly, Section 3–418 furthers the underlying goal of the U.C.C. to safeguard "the interest of society in an orderly banking system, with the rights and liabilities of participants in the world of finance spelled out in advance." 1 Andersen, Uniform Commercial Code, Section 1–102:46 (3d Ed.1981).

Whatever the justification, however, one thing is clear: because of Section 3–418, a drawee that pays "an NSF check will sometimes have to absorb that loss itself and will often have no cause of action against the party who presented the check." White & Summers, Handbook, Section 16–10. *See Marine Midland Bank v. Umber,* 96 Misc.2d 835, 410 N.Y.S.2d 25 (1978); *Northern Trust Co. v. Chase Manhattan Bank, N.A.,* 582 F.Supp. 1380 (S.D.N.Y. 1984); *National Savings and Trust Co. v. Park Corp.,* 722 F.2d 1303 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1916, 80 L.Ed.2d 464 (1984). Here, the rule of finality bars Morgan's equitable claims against American for return of money paid out.

### 2. Conversion (Claim 1)

■ Morgan's first claim for relief is for conversion. The claim is based solely on American's refusal, despite Morgan's demand, to return the $10,000,000 paid on the notes.[10] American is entitled to judgment on this claim as a matter of law.

---

10. A preliminary issue is whether New York or California law governs the claim for conversion. Morgan argues that California law governs because the alleged conversion took place in California. However, few, if any, of the events in this transaction took place outside of New York. The presentment of the notes took place in New York between two New York banks, and the transaction was recorded on the accounts of the

banks in the Federal Reserve Bank of New York. Only after the transaction between Chase and Morgan was consummated did Chase transfer the $10,000,000 credit to American's California account. The alleged conversion therefore took place in New York. Furthermore, the choice of law provisions in the N.Y.U.C.C. favor application of New York law. N.Y.U.C.C. Section 4–102(2) provides that the law for deter-

Under New York law, a cause of action for conversion will lie where (1) the plaintiff can demonstrate legal ownership or an immediate superior right of possession to a specific identifiable thing, and (2) the defendant has exercised unauthorized dominion over the thing, to the exclusion of the plaintiff. *AMF Inc. v. ALGO Distributors, Inc.,* 48 A.D.2d 352, 369 N.Y.S.2d 460, 464 (1975). In this case, Morgan has not demonstrated legal ownership or a superior right of possession to the $10,000,000. When Morgan paid on the Manville notes, it paid as a drawee of the notes. It has failed to demonstrate that it retained any legal right or, as discussed above, any equitable right to the money paid out. Nor has it any right of possession superior to American's.

Moreover, Morgan has not shown that there is any "specific identifiable thing" in this case that can be the subject of a conversion. The transactions at issue were conducted by means of an electronic sorting system which apportions credits and debits at the close of each day's business cycle and registers each member bank as payee or payor. Morgan's money thus was not the subject of a specifically identifiable fund capable of being converted. A "mere claim for moneys paid out by mistake" will not support an action for conversion under New York law. *Northern Trust Co. v. Chase Manhattan Bank, N.A.,* 582 F.Supp. 1380, 1386 (S.D.N.Y. 1984); *Marine Midland Bank v. John E. Russo Produce Co.,* 65 A.D.2d 950, 410 N.Y.S.2d 730, 733 (4th Dep't 1978), *modified on other grounds,* 50 N.Y.2d 31, 405 N.E.2d 205, 427 N.Y.S.2d 961 (1980).

## DISPOSITION

Defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. The third-party claim of American is dismissed. Chase's motion to dismiss is moot as is American's motion for partial summary judgment.

mining the liability of a payor bank shall be the

The Clerk is directed to enter judgment in favor of defendant and against plaintiff.

law of the forum in which the bank resides.